1  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
Rebecca R. Weinreich SB# 155684
2  221 North Figueroa Street, Suite 1200
Los Angeles, California 90012
3  Telephone: (213) 250-1800
Facsimile: (213) 481-0621
4  Email:        weinreich@lbbslaw.com

5  **LEWIS BRISBOIS BISGAARD & SMITH LLP**
Kathleen E. Hegen, SB# 104522
6  One Sansome Street, Suite 1400
San Francisco, California 94104
7  Telephone: (415) 362-2580
Facsimile: (415) 434-0882
8  e-mail:        hegen@lbbslaw.com

9  **WILEY REIN LLP**
Laura A. Foggan SB# 375555
10  1776 K. Street N. W.
Washington, D. C. 20006
11  Telephone: (202) 719-3382
Facsimile: (202) 719-7049
12  Email: tfoggan@wileyrein.com

13  Attorneys for Plaintiff,
The Netherlands Insurance Company
14

ORIGINAL
FILED

OCT 3 1 2007

RICHARD W. WIEKING
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

15

16              UNITED STATED DISTRICT COURT

17              NORTHERN DISTRICT OF CALIFORNIA

18  THE NETHERLANDS INSURANCE          CASE NO.
COMPANY, a New Hampshire
19  corporation,                        C 07 5536

20          Plaintiff,                  **THE NETHERLANDS INSURANCE
                                        COMPANY'S COMPLAINT FOR
21      v.                              DECLARATORY RELIEF;
                                        DEMAND FOR JURY TRIAL**
22  MAX'S OF SKOKIE dba BILLY
BERK'S RESTAURANT & PIANO
23  BAR , a California Corporation

24          Defendant.

25

26          COMES NOW plaintiff The Netherlands Insurance Company ("Netherlands")

27  and files the following complaint against defendant Max's of Skokie dba Billy

28  Berk's Restaurant and Piano Bar ("Max's") for declaratory relief as follows:

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

COPY

 

## I.  Jurisdiction and Venue

1.    This action is brought pursuant to 28 U.S.C. Section 2201 and Federal Rule Of Civil Procedure 57.

2.    This Court has jurisdiction over this action pursuant to 28 U.S.C. Section 1332, 28 U.S.C. Section 2201 and Federal Rule Of Civil Procedure 57. Upon information and belief, the parties are diverse and the amount in controversy exceeds the minimum jurisdictional amount.

3.    Venue in this district is proper pursuant to 28 U.S.C. Section 1391(b). Upon information and belief, Max's is a California Corporation and is subject to personal jurisdiction in this Court as of the date this action is commenced.  Further, the insurance policy which is the subject of this controversy was produced in this district and lists an address for Max's in this district.

4.    Plaintiff Netherlands is, and at all times material hereto, was an insurance company incorporated and domiciled in New Hampshire and with a principal place of business in New Hampshire.

## II.  The Underlying *Halperin* Action

5.    On April 20, 2007, Karl L. Halperin ("Halperin"), individually and on behalf of an alleged class, filed suit against Max's alleging that Max's violated the Fair and Accurate Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act (15 U.S.C. Section 1681, *et seq.*)  A copy of the complaint entitled *Karl L. Halperin, individually and on behalf of a class v. Max's of Skokie, Inc., d/b/a/ Billy Berk's Restaurant and Piano Bar*, Case No. 07CV2207 in the United States District Court for the Northern District of Illinois, Eastern Division, is attached hereto as Exhibit "A" and referred to herein as "*Halperin*".

6.    *Halperin* alleges that Max's "willfully violated [Section 1681c(g)] and failed to protect plaintiff and others similarly situated against identity theft and credit card and debit card fraud by continuing to print more than the last five digits of the card number and/or the expiration date on receipts provided to debit card and credit

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

1   card cardholders transacting business with []Max's". (Exhibit "A," at ¶ 3.) Pursuant

2   to 15 U.S.C. section 1681 *et seq.*, the plaintiffs in *Halperin* seek "statutory damages,

3   attorney's fees, and costs." ( Exhibit "A," at ¶ 4.)

4       7.    *Halperin* also alleges "On information and belief, it is possible for

5   thieves to replicate a credit card number using the expiration date and the last four

6   digits of the card number." (Exhibit "A," at ¶¶ 11, 12.)

7       8.    *Halperin* alleges that Max's provided offending electronically printed

8   receipts to over 100 persons and that Halperin's "claims are typical of the claims of

9   the class members. All are based on the same legal theories and arise from the same

10  unlawful and willful conduct." (Exhibit "A," at ¶¶ 16 and 17.) Moreover, *Halperin*

11  alleges that class action is the preferable vehicle for adjudicating the claim as

12  "[i]ndividual actions are not economically feasible." (Exhibit "A," at ¶ 20.)

13      9.    The plaintiff in *Halperin* alleges, on information and belief, that Max's

14  knew of the requirement concerning the transaction of credit and debit card numbers

15  and the prohibition on the printing of expiration dates on receipts. (Exhibit "A," at ¶

16  27.) Halperin alleges that Max's "willfully disregarded FACTA's requirements and

17  continued to use cash registers or other machines or devices that print receipts in

18  violation of FACTA." (Exhibit "A," at ¶ 31.)

19      10.   *Halperin* seeks the statutory recovery of not less than $100 to $1,000 for

20  each violation by Max's together with attorneys' fees, litigation expenses and costs

21  (pursuant to 15 U.S.C. Section 1681n).

22              ### III.  **Fair Credit Reporting Act**

23      11.   *Halperin* seeks relief under the Fair Credit Reporting Act ("FCRA"), 15

24  U.S.C. Section 1681 *et seq*. The Fair and Accurate Credit Transactions Act

25  ("FACTA"), specifies additional conduct proscribed under FCRA, that "no person

26  that accepts credit cards or debit cards for the transaction of business shall print more

27  than the last 5 digits of the card number or the expiration date upon any receipt

28  provided to the cardholder at the point of sale or transaction." 15 U.S.C. Section

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800



1681 (c) (g). The nature of civil liability for violations of this statute are 15 U.S.C.
Section 1681n and Section 1681o).

12.    15 U.S.C. Section 1681n, entitled "Civil liability for willful non-
compliance," states:

(a) In general

Any person who willfully fails to comply with any

requirement imposed under this subchapter with respect to

any consumer, is liable to that consumer in an amount

equal to the sum of -

(1) (A) any actual damages sustained by the consumer as a

result of the failure or damages of not less than $100 and

not more than $1,000; or

[ . . .]

(2) such amount of punitive damages as the court may

allow; and

(3) in the case of any successful action to enforce any

liability under this section, the costs of the action together

with reasonable's fees as determined by the court.

## IV.  The Netherlands Policy

13.    The Netherlands Insurance Company issued policy number CBP
8156716 to named insured, Max's of Skokie dba Billy Berk's Restaurant, with
effective dates of September 1, 2006 to September 1, 2007 ("Netherlands Policy").
A copy of the Netherlands Policy is attached hereto as Exhibit "B" and is
incorporated herein by reference.  The Netherlands Policy has an "Each Occurrence
Limit" of $1,000,000; a "Personal and Advertising Injury Limit" of $1,000,000
subject to a "General Aggregate Limit" of $2,000,000.  The Netherlands Policy
includes Coverage (a), which provides coverage sums that the insured legally
becomes obligated to pay as damages because of "bodily injury" or "property

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

 

damage," as defined in the Netherlands Policy.  Coverage A is subject to additional terms, exclusions, conditions and limits as stated in the Netherlands Policy, which are incorporated herein by this reference.

14.    The Netherlands Policy provides, in part, as follows:

**COVERAGE A.  BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1.    Insuring Agreement**

    **a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies.  We will have the right and duty to defend the insured against any "suit" seeking those damages.  However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply.

                        \* \* \* \* \*

    b.    This insurance applies to "bodily injury" and "property damage" only if:

        (1)    The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

        (2)    The "bodily injury" or "property damage" occurs during the policy period;

                       \* \* \* \* \*

15.    The policy defines "bodily injury", "property damage" and "occurrence" as follows:

    "Bodily Injury" means bodily injury, sickness or disease sustained by a person, including death, resulting from any

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

 

of these at any time.

"Property damage" means:

a.    Physical injury to tangible property, including all resulting loss of use of that property. All such loss of use shall be deemed to occur at the time of the physical injury that caused it; or

b.    Loss of use of tangible property that is not physically injured. All such loss of use shall be deemed to occur at the time of the "occurrence" that caused it.

For purposes of this insurance, electronic data is not tangible property. As used in this definition, electronic data means information, facts or programs stored as or on, created or used on, or transmitted to or from computer software, including systems and applications software, hard or floppy disks, CD-ROMS, tapes, drives, cells, data processing devices or any other media which are used with electronically controlled equipment.

"Occurrence" means an accident, including continuous or repeated exposure to substantially the same general harmful conditions.

16.    The Netherlands Policy also provides, in part, as follows:

**COVERAGE B. PERSONAL AND ADVERTISING INJURY LIABILITY**

**1.    Insuring Agreement**

**a.**    We will pay those sums that the insured becomes legally obligated to pay as damages because of "personal and advertising injury" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800



damages for "personal and advertising injury" to which this insurance does not apply.

\* \* \* \* \*

    **b.**    This insurance applies to "personal and advertising injury" caused by an offense arising out of your business but only if the offense was committed in the "coverage territory" during the policy period.

17.    "Personal and advertising injury" is defined in the Netherlands Policy as an injury arising out of one or more of the following "offenses":

    a.    False arrest, detention or imprisonment;

    b.    Malicious prosecution;

    c.    The wrongful eviction from, wrongful entry into, or invasion of the right of private occupancy of a room, dwelling or premises that a person occupies, committed by or on behalf of its owner, landlord or lessor;

    d.    Oral or written publication, in any manner, of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services;

    e.    Oral or written publication, in any manner, of material that violates a person's right of privacy;

    f.    The use of another's advertising idea in your "advertisement"; or

    g.    Infringing upon another's copyright, trade dress or slogan in your "advertisement".

18.    The Netherlands Policy includes the exclusion for "Distribution of Material In Violation Of Statutes," which states:

\* \* \* \* \*

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

COMPLAINT FOR DECLARATORY RELIEF

 

A.  The following exclusion is added to Paragraph 2.

Exclusions of Section I - Coverage A - Bodily Injury and

Property Damage Liability:

2.    Exclusions

This insurance does not apply to :

**DISTRIBUTION OF MATERIAL IN VIOLATION OF**

**STATUTES**

"Bodily Injury" or "property damage" arising directly or

indirectly out of any action or omission that violates or is alleged

to violate:

a.    The Telephone Consumer Protection Act (TCPA),including any

amendment of or addition to such law; or

b.    The CAN-SPAM Act of 2003, including any amendment of or

addition to such law; or

c.    Any statute, ordinance or regulation, other than the TCPA or

CAN-SPAM Act of 2003, that prohibits or limits the sending,

transmitting, communicating or distribution of material or information.


B.  The following exclusion is added to Paragraph 2.

Exclusions of Section I - Coverage B - Personal and

Advertising Injury Liability:

2.    Exclusions

This insurance does not apply to :

**DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES**

"Personal and advertising" arising directly or indirectly out of any

action or omission that violates or is alleged to violate:

a.    The Telephone Consumer Protection Act (TCPA),including any

amendment of or addition to such law; or

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

b.    The CAN-SPAM Act of 2003, including any amendment of or addition to such law; or

c.    Any statute, ordinance or regulation, other than the TCPA or CAN-SPAM Act of 2003, that prohibits or limits the sending, transmitting, communicating or distribution of material or information.

19.    A Netherlands Policy also includes the following exclusions with respect to Coverage B - Personal and Advertising Injury Liability:

"2.    Exclusion

This insurance does not apply to:

a.    **Knowing Violation Of Rights Of Another**

'Personal Advertising Injury' caused by or at the direction of the insured with the knowledge that the act would violate the rights of another and would inflict 'personal and advertising injury.' [ . . .]

c.    **Material Published Prior To Policy Period**

'Personal and Advertising Injury' arising out of oral or written publication of material whose first publication took place before the beginning of the policy period."

## V.  Claim History

20.    *Halperin* was tendered to Netherlands and in response Netherlands issued a reservation of rights letter dated August 16, 2007, agreeing to defend Max's but reserving Netherlands' rights in various regards, including but not limited to the matters set forth herein with respect to the Netherlands Policy.  Additionally, Netherlands reserved the right to seek reimbursement of any and all defense expenses (including but not limited to attorneys' fees and costs), as well as any indemnity payments (including but not limited to payments made in settlement or in

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

satisfaction of a judgment). A true and correct copy of the August 16, 2007 reservation of right letter is attached hereto as Exhibit C.

## FIRST CAUSE OF ACTION

(Declaratory Relief - No Duty to Defend Because No Damages)

21. Netherlands incorporates by reference the allegations contained in paragraphs 1 through 20, inclusive, as though set forth in full herein.

22. An actual controversy exists between Netherlands on the one hand and Max's on the other hand in that Netherlands contends that it is not obligated to defend Max's in connection with *Halperin* pursuant to the provisions of Netherlands Policy. As set forth above, and upon information and belief, the *Halperin* action seeks statutory damages and other remedies under 15 U.S.C. Section 1681n, which are not insurable damages under the Netherlands Policy and further, affording coverage for the remedies sought in the *Halperin* action would violate, among other things, public policy. Netherlands is informed and believes that Max's contends to the contrary.

23. A prompt adjudication of this controversy is necessary so that the parties may resolve this dispute at the earliest possible time to avoid prejudice to Netherlands' rights.

24. No adequate remedy at law is available to Netherlands.

25. Therefore, Netherlands desires a judicial determination and declaration of Netherlands' rights and duties on this issue.

## SECOND CAUSE OF ACTION

(Declaratory Relief -No Duty to Indemnify Because No Damages)

26. Netherlands incorporates by reference the allegations contained in paragraphs 1 through 20, inclusive, as though set forth in full herein.

27. An actual controversy exists between Netherlands on the one hand and Max's on the other hand in that Netherlands contends that it is not obligated to indemnify Max's in connection with *Halperin* pursuant to the provisions of the

4835-1018-7265.1                                              -10-

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

1  Netherlands Policy.  As set forth above, and upon information and belief, the

2  *Halperin* action seeks statutory damages and other remedies under 15 U.S.C. Section

3  1681n, which are not insurable damages under the Netherlands Policy and further,

4  affording coverage for the remedies sought in the *Halperin* action would violate,

5  among other things, public policy.  Netherlands is informed and believes that Max's

6  contends to the contrary.

7      28.    A prompt adjudication of this controversy is necessary so that the

8  parties may resolve this dispute at the earliest possible time to avoid prejudice to

9  Netherlands' rights.

10     29.    No adequate remedy at law is available to Netherlands.

11     30.    Therefore, Netherlands desires a judicial determination and declaration

12 of Netherlands' rights and duties on this issue.

### THIRD CAUSE OF ACTION

(Declaratory Relief - No Duty to Defend - No Bodily Injury or Property Damage

Caused by an Occurrence)

16     31.    Netherlands incorporates by reference the allegations contained in

17 paragraphs 1 through 20, inclusive, as though set forth in full herein.

18     32.    An actual controversy exists between Netherlands on the one hand and

19 Max's on the other hand on the grounds that *Halperin*  does not allege "bodily

20 injury" or "property damage" caused by an "occurrence."  Therefore, Netherlands

21 has no duty to defend Max's under Coverage A of its policy.   Netherlands is

22 informed and believes that Max's contends to the contrary.

23     33.    A prompt adjudication of this controversy is necessary so that the

24 parties may resolve this dispute at the earliest possible time.

25     34.    No adequate remedy at law is available to Netherlands.

26     35.    Therefore, Netherlands desires a judicial determination and declaration

27 of Netherlands' rights and duties.

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800



**FOURTH CAUSE OF ACTION**

(Declaratory Relief - No Duty to Indemnify- No Bodily Injury or Property Damage Caused by an Occurrence)

36.    Netherlands incorporates by reference the allegations contained in paragraphs 1 through 20, inclusive, as though set forth in full herein.

37.    An actual controversy exists between Netherlands on the one hand and Max's on the other hand on the grounds that *Halperin* does not allege "bodily injury" or "property damage" caused by an "occurrence." Therefore, Netherlands has no duty to indemnify Max's under Coverage A of its policy. Netherlands is informed and believes that Max's contends to the contrary.

38.    A prompt adjudication of this controversy is necessary so that the parties may resolve this dispute at the earliest possible time.

39.    No adequate remedy at law is available to Netherlands.

40.    Therefore, Netherlands desires a judicial determination and declaration of Netherlands' rights and duties.

**FIFTH CAUSE OF ACTION**

(Declaratory Relief - No Duty to Defend - No Personal and Advertising Injury)

41.    Netherlands incorporates by reference the allegations contained in paragraphs 1 through 20, inclusive, as though set forth in full herein.

42.    An actual controversy exists between Netherlands on the one hand and Max's on the other hand on the grounds that Netherlands believes *Halperin* does not allege publication, invasion of privacy or any other Personal and Advertising injury as required under the Netherlands Policy. Therefore, Netherlands contends it has no duty to defend Max's under Coverage B of its policy. Netherlands is informed and believes that Max's contends to the contrary.

43.    A prompt adjudication of this controversy is necessary so that the parties may resolve this dispute at the earliest possible time.

44.    No adequate remedy at law is available to Netherlands.

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

45.    Therefore, Netherlands desires a judicial determination and declaration of Netherlands' rights and duties.

## SIXTH CAUSE OF ACTION

(Declaratory Relief - No Duty to Indemnify- No Personal and Advertising Injury)

46.    Netherlands incorporates by reference the allegations contained in paragraphs 1 through 20, inclusive, as though set forth in full herein.

47.    An actual controversy exists between Netherlands on the one hand and Max's on the other hand on the grounds that Netherlands believes *Halperin* does not allege publication, invasion of privacy or any other Personal and Advertising injury as required under the Netherlands Policy.  Therefore, Netherlands contends it has no duty to indemnify Max's under Coverage B of its policy.   Netherlands is informed and believes that Max's contends to the contrary.

48.    A prompt adjudication of this controversy is necessary so that the parties may resolve this dispute at the earliest possible time.

49.    No adequate remedy at law is available to Netherlands.

50.    Therefore, Netherlands desires a judicial determination and declaration of Netherlands' rights and duties.

## SEVENTH CAUSE OF ACTION

(Declaratory Relief - No Duty to Defend - Applicable Exclusions)

51.    Netherlands incorporates by reference the allegations contained in paragraphs 1 through 20, inclusive, as though set forth in full herein.

52.    An actual controversy exists between Netherlands on the one hand and Max's on the other hand on the grounds that Netherlands believes that it is not obligated to defend Max's in connection with *Halperin* based on the above-described exclusions entitled "DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES," "Knowing Violation Of Rights Of Another" and "Material Published Prior To Policy Period."  Netherlands is informed and believes that Max's contends to the contrary.

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

4835-1018-7265.1

-13-



53.   A prompt adjudication of this controversy is necessary so that the parties may resolve this dispute at the earliest possible time.

54.   No adequate remedy at law is available to Netherlands.

55.   Therefore, Netherlands desires a judicial determination and declaration of Netherlands' rights and duties.

## EIGHTH CAUSE OF ACTION

(Declaratory Relief - No Duty to Indemnify - Applicable Exclusions)

56.   Netherlands incorporates by reference the allegations contained in paragraphs 1 through 20, inclusive, as though set forth in full herein.

57.   An actual controversy exists between Netherlands on the one hand and Max's on the other hand on the grounds that Netherlands believes that it is not obligated to indemnify Max's in connection with *Halperin* based on the above-described exclusions entitled "DISTRIBUTION OF MATERIAL IN VIOLATION OF STATUTES," "Knowing Violation Of Rights Of Another" and "Material Published Prior To Policy Period." Netherlands is informed and believes that Max's contends to the contrary.

58.   A prompt adjudication of this controversy is necessary so that the parties may resolve this dispute at the earliest possible time.

59.   No adequate remedy at law is available to Netherlands.

60.   Therefore, Netherlands desires a judicial determination and declaration of Netherlands' rights and duties.

## NINTH CAUSE OF ACTION

(Declaratory Relief - No Duty to Defend - Insurance Code section 533)

61.   Netherlands incorporates by reference the allegations contained in paragraphs 1 through 20, inclusive, as though set forth in full herein.

62.   An actual controversy exists between Netherlands on the one hand and Max's on the other hand on the grounds that Netherlands believes that it is not obligated to defend Max's in connection with *Halperin* because that suit alleges

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

willful or intentional wrongful acts by Max's, coverage for which is precluded by Insurance Code section 533. Netherlands is informed and believes that Max's contends to the contrary.

63.    A prompt adjudication of this controversy is necessary so that the parties may resolve this dispute at the earliest possible time.

64.    No adequate remedy at law is available to Netherlands.

65.    Therefore, Netherlands desires a judicial determination and declaration of Netherlands' rights and duties.

## TENTH CAUSE OF ACTION

(Declaratory Relief - No Duty to Indemnify - Insurance Code Section 533)

66.    Netherlands incorporates by reference the allegations contained in paragraphs 1 through 20, inclusive, as though set forth in full herein.

67.    An actual controversy exists between Netherlands on the one hand and Max's on the other hand on the grounds that Netherlands believes that it is not obligated to indemnify Max's in connection with *Halperin* because that suit alleges willful or intentional wrongful acts by Max's, coverage for which is precluded by Insurance Code section 533. Netherlands is informed and believes that Max's contends to the contrary.

68.    A prompt adjudication of this controversy is necessary so that the parties may resolve this dispute at the earliest possible time.

69.    No adequate remedy at law is available to Netherlands.

70.    Therefore, Netherlands desires a judicial determination and declaration of Netherlands' rights and duties.

## ELEVENTH CAUSE OF ACTION

(Reimbursement)

71.    Netherlands incorporates by reference the allegations contained in Paragraphs 1 through 70, inclusive, as though set forth in full herein.

72.    Netherlands is defending *Halperin* under a reservation of rights.

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800



Pursuant to *Buss v. Superior Court*, 16 Cal.4th 35 (1997), Netherlands is entitled to reimbursement of defense fees and costs it has and/or will expend in defense of matters which were never covered under its policy. In the instant matter, Netherlands has expended and will expend fees and costs defending Max's in *Halperin* from and after the date of tender of those lawsuits. Netherlands specifically reserved its rights to seek reimbursement of those costs.

73.    Netherlands requests a judgment declaring that it is entitled to reimbursement of some and/or all of the defense fees and costs it has expended in defense of *Halperin*.

## **PRAYER FOR RELIEF**

WHEREFORE, The Netherlands Insurance Company prays for judgment against Max's as follows:

1.    For a declaration that Netherlands is not obligated to defend Max's in connection with *Halperin*;

2.    For a declaration that Netherlands is not obligated to indemnify Max's in connection with *Halperin* pursuant to the provisions of the Netherlands Policy;

3.    For recovery of the fees and costs it has expended in defending *Halperin*;

4.    For costs of suit incurred; and

5.    For such other and further relief as the Court deems just and proper.

DATED: October _30_, 2007    LEWIS BRISBOIS BISGAARD & SMITH LLP

By_____
          Rebecca R. Weinreich
          Attorneys for Plaintiff, The Netherlands
          Insurance Company

LEWIS BRISBOIS BISGAARD & SMITH LLP
221 NORTH FIGUEROA STREET, SUITE 1200
LOS ANGELES, CALIFORNIA 90012-2601
TELEPHONE (213) 250-1800

 

## DEMAND FOR JURY TRIAL

The Netherlands Insurance Company requests a jury trial in this matter.


DATED: October _30_, 2007    LEWIS BRISBOIS BISGAARD & SMITH LLP

By _____
Rebecca R. Weinreich
Attorneys for Plaintiff, The Netherlands
Insurance Company

COMPLAINT FOR DECLARATORY RELIEF

**EXHIBIT A**



# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |  |
|---|---|---|
| KARL L. HALPERIN, individually and on behalf of a class, | ) ) ) | 07CV2207 |
| Plaintiff, | ) ) | JUDGE ST.EVE MAGISTRATE JUDGE DENLOW |
| v. | ) ) | |
| MAX'S OF SKOKIE, INC., d/b/a BILLY BERK'S RESTAURANT AND PIANO BAR, and DOES 1-10, | ) ) ) ) ) | **JUDGES COPY** |
| Defendants. | ) ) ) | APR 2 0 2007 |
|  |  | MICHAEL W. DOBBINS CLERK, U.S. DISTRICT COURT |

## COMPLAINT – CLASS ACTION

### INTRODUCTION

1.     Plaintiff Karl L. Halperin brings this action to secure redress for the violation by Max's of Skokie, Inc., d/b/a Billy Berk's Restaurant and Piano Bar of the Fair and Accurate Transactions Act ("FACTA") amendment to the Fair Credit Reporting Act ("FCRA").

2.     One provision of FACTA, codified as 15 U.S.C. §1681c(g), provides that:

> **No person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.**

3.     The law gave merchants who accept credit cards and/or debit cards up to three years to comply with its requirements, requiring full compliance with its provisions no later than December 4, 2006. Defendant Max's of Skokie, Inc., d/b/a Billy Berk's Restaurant and Piano

1

000018



Bar has willfully violated this law and failed to protect plaintiff and others similarly situated against

identity theft and credit card and debit card fraud by continuing to print more than the last five digits

of the card number and/or the expiration date on receipts provided to debit card and credit card

cardholders transacting business with defendant Max's of Skokie, Inc., d/b/a Billy Berk's Restaurant

and Piano Bar.

4.    Plaintiff brings this action against defendant based on defendant's violation

of 15 U.S.C. §§1681 *et seq.*   Plaintiff seeks statutory damages, attorneys fees, and costs.

## JURISDICTION AND VENUE

5.    This Court has subject matter jurisdiction under 28 U.S.C. §1331 and 15

U.S.C. §1681p (FCRA).

6.    Venue in this district is proper because defendant Max's of Skokie, Inc., d/b/a

Billy Berk's Restaurant and Piano Bar does business here.

## PARTIES

7.    Plaintiff, Karl L. Halperin, is a resident of this district.

8.    Defendant Max's of Skokie, Inc., d/b/a Billy Berk's Restaurant and Piano Bar

is an Illinois corporation which operates a restaurant at 3 Old Orchard Shopping Center, Skokie, IL

60077. Its registered agent and office are National Corporate Research LT, 520 S. Second St., Suite

403, Springfield, IL 62701.

9.    Defendant Max's of Skokie, Inc., d/b/a Billy Berk's Restaurant and Piano Bar

is a "person that accepts credit cards or debit cards for the transaction of business" within the

meaning of FACTA.

10.    Defendants Does 1-10 are individual officers, directors, employees and

2

agents of defendant Max's of Skokie, Inc., d/b/a Billy Berk's Restaurant and Piano Bar who authorized, directed or participated in the violations of law complained of.

## FACTS

11.    On April 17, 2007, plaintiff received from Max's of Skokie, Inc., d/b/a Billy Berk's Restaurant and Piano Bar at its establishment located at Old Orchard Shopping Center a computer-generated cash register receipt which displayed plaintiff's card expiration date.

12.    On information and belief, it is possible for thieves to replicate a credit card number using the expiration date and the last four digits of the card number.

## CLASS ALLEGATIONS

13.    Plaintiff brings this action on behalf of a class pursuant to Fed.R.Civ.P. 23(a) and (b)(3).

14.    The class is defined as all persons to whom Max's of Skokie, Inc., d/b/a Billy Berk's Restaurant and Piano Bar provided an electronically printed receipt at the point of sale or transaction in a transaction occurring in Illinois after December 4, 2006, which receipt displays either (a) more than the last five digits of the person's credit card or debit card number, and/or (b) the expiration date of the person's credit or debit card.

15.    The class is so numerous that joinder of all individual members in one action would be impracticable.

16.    There are over 100 persons to whom Max's of Skokie, Inc., d/b/a Billy Berk's Restaurant and Piano Bar provided an electronically printed receipt at the point of sale or transaction, in a transaction occurring in Illinois after December 4, 2006, which receipt displays either (a) more than the last five digits of the person's credit card or debit card number, and/or (b)

3

the expiration date of the person's credit or debit card.

17.    Plaintiff's claims are typical of the claims of the class members. All are based on the same legal theories and arise from the same unlawful and willful conduct.

18.    There are common questions of fact and law affecting members of the class, which common questions predominate over questions which may affect individual members. These include the following:

a.    Whether defendant Max's of Skokie, Inc., d/b/a Billy Berk's Restaurant and Piano Bar had a practice of providing customers with a sales or transaction receipt on which defendant Max's of Skokie, Inc., d/b/a Billy Berk's Restaurant and Piano Bar printed more than the last five digits of the credit card or debit card and/or the expiration date of the credit card or debit card;

b.    Whether defendant Max's of Skokie, Inc., d/b/a Billy Berk's Restaurant and Piano Bar thereby violated FACTA;

c.    Whether defendant Max's of Skokie, Inc., d/b/a Billy Berk's Restaurant and Piano Bar's conduct was willful.

d.    Identification and involvement of the Doe defendants.

19.    Plaintiff will fairly and adequately represent the class members. Plaintiff has no interests that conflict with the interests of the class members. Plaintiff has retained experienced counsel.

20.    A class action is superior to other available means for the fair and efficient adjudication of the claims of the class members. Individual actions are not economically feasible.

**VIOLATION ALLEGED**

4

21.     Defendants violated 15 U.S.C. §1681c(g)(1), which provides that:

. . . no person that accepts credit cards or debit cards for the transaction of business shall print more than the last five digits of the card number or the expiration date upon any receipt provided to the cardholder at the point of sale or transaction.

22.     With respect to machines that were first put into use after January 1, 2005, 15 U.S.C. §1681c(g)(3)(B) required immediate compliance with the provisions of 15 U.S.C. §1681c(g)(1).

23.     With respect to machines that were in use before January 1, 2005, 15 U.S.C. §1681c(g)(3)(B) required compliance with the provisions of 15 U.S.C. §1681c(g)(1) on or after December 4, 2006.

24.     Defendant Max's of Skokie, Inc., d/b/a Billy Berk's Restaurant and Piano Bar accepts credit cards and/or debit cards in the course of transacting business with persons such as plaintiff and the class members. In transacting such business, defendant uses cash registers and/or other machines or devices that electronically print receipts for credit card and/or debit card transactions.

25.     After the effective date of the statute, defendant Max's of Skokie, Inc., d/b/a Billy Berk's Restaurant and Piano Bar, at the point of sale or transaction, provided plaintiff and each class member with one or more electronically printed receipts on each of which defendant printed more than the last five digits of the credit card or debit card number and/or printed the expiration date of the credit card or debit card.

26.     FACTA was enacted in 2003 and gave merchants who accept credit card and/or debit cards up to three years to comply with its requirements, requiring compliance for all

5.

machines no later than December 4, 2006.

27.   On information and belief, defendant Max's of Skokie, Inc., d/b/a Billy Berk's Restaurant and Piano Bar knew of the requirement concerning the truncation of credit and debit card numbers and prohibition on printing of expiration dates.

28.   On information and belief, VISA, MasterCard, the PCI Security Standards Council — a consortium founded by VISA, MasterCard, Discover, American Express and JCB — companies that sell cash registers and other devices for the processing of credit or debit card payments, and other entities informed defendant Max's of Skokie, Inc., d/b/a Billy Berk's Restaurant and Piano Bar about FACTA, including its specific requirements concerning the truncation of credit card and debit card numbers and prohibition on the printing of expiration dates, and defendant Max's of Skokie, Inc., d/b/a Billy Berk's Restaurant and Piano Bar's need to comply with the same.

29.   The requirement was widely publicized among retailers.

30.   Most of defendant Max's of Skokie, Inc., d/b/a Billy Berk's Restaurant and Piano Bar's business peers and competitors readily brought their credit card and debit card receipt printing process into compliance with FACTA by, for example, programming their card machines and devices to prevent them from printing more than the last five digits of the card number and/or the expiration date upon the receipts provided to the cardholders. Defendant Max's of Skokie, Inc., d/b/a Billy Berk's Restaurant and Piano Bar could have readily done the same.

31.   Defendants willfully disregarded FACTA's requirements and continued to use cash registers or other machines or devices that print receipts in violation of FACTA.

WHEREFORE, plaintiff requests that the Court enter judgment in favor of plaintiff and the class members and against defendants as follows:

6

a.    For statutory damages of $100 to $1,000 per violation;

b.    For attorney's fees, litigation expenses and costs;

c.    For such other and further relief as the Court may deem proper.


_____
Daniel A. Edelman

Daniel A. Edelman
Cathleen M. Combs
James O. Latturner
EDELMAN, COMBS, LATTURNER
    & GOODWIN, LLC
120 S. LaSalle Street, 18th Floor
Chicago, Illinois 60603
(312) 739-4200
(312) 419-0379 (FAX)


**JURY DEMAND**

Plaintiff demands trial by jury.


_____
Daniel A. Edelman

T:\19623\Pleading\Complaint_Pleading.wpd

7

**EXHIBIT B**



**Golden Eagle Insurance** ™
Member of Liberty Mutual Group

Coverage is provided in:
## THE NETHERLANDS INSURANCE COMPANY-A STOCK COMPANY

This policy has been prepared for:
MAX'S OF SKOKIE LP
DBA: BILLY BERK'S RESTAURANT
C/O E H MERRIMAN INSURANCE
1001 BROADWAY 3RD FLOOR
MILLBRAE CA   94030

**DUPLICATE**

Agent Name and Address:

CROUSE & ASSOC-NO CALIF
100 PINE STREET STE 2500
SAN FRANCISCO CA   94111

Agent Code:   **4295300**

Agent's Phone Number:  (415)-982-3870

Your insurance policy is enclosed. Please place it with your important papers.

Thank you for selecting us to service your insurance needs!

000025

INSURED COPY

 

# TERRORISM INSURANCE PREMIUM DISCLOSURE
## AND OPPORTUNITY TO REJECT

**This notice contains important information about the Terrorism Risk Insurance Act and your option to reject terrorism insurance coverage. Please read it carefully.**

## THE TERRORISM RISK INSURANCE ACT

The Terrorism Risk Insurance Act ("TRIA" or the "Act") establishes a temporary program to spread the risk of catastrophic losses from certain acts of terrorism between insurers and the federal government.

TRIA requires insurers to pay losses from "certified acts of terrorism" up to an amount equal to a percentage of its direct earned premium ("insurer deductible"). If an individual insurer's losses exceed this amount, the government will reimburse the insurer for 90% of losses paid in excess of the deductible, provided that aggregate industry losses from such an act exceed $50 million. In 2007, the government's percentage share of losses paid above the insurer deductible will be 85% and will only be triggered if aggregate losses exceed $100 million. An insurer that has met its insurer deductible is not liable for any portion of losses in excess of an industry aggregate loss of $100 billion per year. Similarly, the federal government is not liable for any losses covered by the Act that exceed this amount.

## MANDATORY AVAILABILITY OF COVERAGE FOR "ACTS OF TERRORISM"

TRIA requires insurers to offer coverage for losses resulting from "certified acts of terrorism" that could otherwise be excluded, and to specify the premium for this coverage. Insurers are also required to disclose the premium for coverage for losses that result from "certified acts of terrorism" where exclusions are not permitted by state law.

A "certified act of terrorism" means: any act that is certified by the Secretary of the Treasury, in concurrence with the Secretary of State, and the Attorney General of the United States to be an act of terrorism; to be a violent act or an act that is dangerous to human life, property; or infrastructure; to have resulted in damage within the United States, or outside the United States in the case of an air carrier or vessel or the premises of a United States mission; and to have been committed by an individual or individuals acting on behalf of any foreign person or foreign interest, as part of an effort to coerce the civilian population of the United States or to influence the policy or affect the conduct of the United States Government by coercion.

## REJECTION OF TERRORISM INSURANCE COVERAGE - WHAT YOU MUST DO

We have included in your policy coverage for losses resulting from "certified acts of terrorism" as defined above.

THE PREMIUM CHARGE FOR THIS COVERAGE APPEARS ON THE DECLARATIONS PAGE OF THE POLICY AND DOES NOT INCLUDE ANY CHARGES FOR THE PORTION OF LOSS COVERED BY THE FEDERAL GOVERNMENT UNDER THE ACT If we are providing you with a quote, the premium charge will also appear on your quote as a separate line item charge.

For policies that expire in 2008, note that the premium disclosed is only for TRIA coverage through December 31, 2007 – the date TRIA is currently set to expire. If TRIA is extended (see below for additional information on expiration issues), you may be billed for additional TRIA premium.

**Important:** Please note that even if you elect to purchase coverage for "certified acts of terrorism", losses caused by war will still be excluded from coverage under your policy. Losses resulting from terrorist acts that the Secretary of the Treasury fails to certify as falling within the Act, such as those that are the result of a terrorist act that was not committed on behalf of any foreign person or foreign government and which exceed an aggregate cost to the insurance industry of $25 million, will also be excluded unless such coverage is separately offered by the company and purchased by you.

Note: if you have rejected coverage for "certified acts of terrorism" in your underlying liability insurance and you have a Commercial Umbrella Liability Policy with us, you must also reject coverage for "certified acts of terrorism" in that Commercial Umbrella Liability Policy

Note also: if your policy covers locations in more than one state, the rejection of coverage would only apply in those states that allow exclusions for a "certified acts of terrorism."

There are two final limitations that are critical to note:

First, TRIA no longer applies to the following types of policies: commercial auto, burglary and theft (i.e. commercial crime), surety, professional liability, and farm owners multiperil. This notice does not apply to any of those coverages.

ST-ML-505 (04/06)
Page 1 of 2

 

Second, TRIA is currently set to expire December 31, 2007.

- If TRIA expires, where permitted by state law your policy will automatically exclude coverage for losses arising from "certified acts of terrorism";

- If TRIA is extended but insurers are no longer required to offer terrorism coverage and one of the following also occurs: the percentage basis for the insurer deductible is increased; the percentage share of the government's share of losses is decreased; terrorism is redefined; or terrorism coverage is made subject to policy terms that differ from those applicable to other types of events or occurrences, where permitted by state law your policy will automatically exclude coverage for losses arising from "certified acts of terrorism";

- If some form of TRIA is extended with changes or becomes law and we are required to offer you the coverage, we may: notify you of these changes, endorse the policy to reflect the current law, and/or revise the TRIA charge on your policy to reflect changes in the exposure.

IF YOU CHOOSE TO REJECT THIS COVERAGE, PLEASE CHECK THE BOX BELOW, SIGN THE ACKNOWLEDGMENT AND RETURN IT IN THE ENCLOSED ENVELOPE. Please ensure any rejection is received within thirty (30) days of the effective date of your policy.

___  I hereby reject this offer of coverage. I understand that by rejecting this offer, I will have no coverage for losses arising from a "certified acts of terrorism" and my policy will be endorsed accordingly. I also understand that if I reject this offer, but TRIA expires and the insurer is not permitted by state law to exclude terrorism, that I may be charged additional premium for this state mandated coverage.

Note that certain states (currently CA, CT IA, IL, MA, ME, MO, NC, NJ, PA, RI, VA, and WI) mandate coverage for loss caused by fire following a "certified act of terrorism" in certain types of insurance policies. If you reject TRIA coverage in these states or on those policies, you will not be charged any additional premium for that state mandated coverage.

_____

Policyholder/Applicant Signature

_____

Print Name

_____

Date

THE SUMMARY OF THE ACT AND THE COVERAGE UNDER YOUR POLICY CONTAINED IN THIS NOTICE IS NECESSARILY GENERAL IN NATURE. YOUR POLICY CONTAINS SPECIFIC TERMS, DEFINITIONS, EXCLUSIONS AND CONDITIONS. IN CASE OF ANY CONFLICT YOUR POLICY LANGUAGE WILL CONTROL THE RESOLUTION OF ALL COVERAGE QUESTIONS. PLEASE READ YOUR POLICY CAREFULLY

If you have any questions regarding this notice, please contact your agent.

FOLD                                                                                                        FOLD

**Policy Number:**

8156716

**Insured Name:**                              **Please fold on line.  Company**
                                               **address must show through window.**
MAX'S OF SKOKIE LP
DBA: BILLY BERK'S RESTAURANT

**Effective Date:**

09/01/2006


GOLDEN EAGLE INSURANCE
1340 TREAT BLVD SUITE 400
WALNUT CREEK CA  94597-7591
‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖‖        000027

ST-ML-505 (04/06)
Page 2 of 2

 

# IMPORTANT POLICYHOLDER NOTICE REGARDING YOUR INSURANCE

This policyholder notice is to advise you that should any complaints arise regarding this insurance, you may contact the following:

1. **Your independent agent:** Your independent agent can answer questions or clarify concerns that you may have regarding this insurance. We recommend calling your agent if you need assistance.

2. **Indiana Insurance Company:** You may contact us, depending on the type of insurance, at one of the following addresses or phone number(s):

   **Personal Insurance Policyholders, please contact us at:**

   Indiana Insurance Company
   6281 Tri-Bridge Blvd
   Loveland, OH 45140
   Attn: Personal Line Operations Center

   1-877-783-3410
   1-800-436-9600

   **Commercial Insurance Policyholders, please contact us at:**

   Indiana Insurance Company
   P.O. Box 5200
   3333 Warrenville Road
   Lisle, IL 60532

   1-630-505-1442
   1-877-640-6018

3. **Illinois Department of Insurance:** You can contact the Department of Insurance at the following address or phone number(s):

   Illinois Department of Insurance
   320 W. Washington Street
   Springfield, IL 62767
   Attn: Consumer Division

   1-217-782-4515
   1-866-445-5364 (Toll Free within Illinois)

Thank you for selecting us to service your insurance needs!

ST-AL-3 (11/02)                              000028                              Page 1 of 1

 

# IMPORTANT NOTICE TO POLICYHOLDERS

With respect to insurance provided under the following:

COMMERCIAL GENERAL LIABILITY COVERAGE PART
PRODUCTS/COMPLETED OPERATIONS LIABILITY COVERAGE PART
OWNERS AND CONTRACTORS PROTECTIVE LIABILITY COVERAGE PART
RAILROAD PROTECTIVE LIABILITY COVERAGE PART
CUSTOM COMMERCIAL PROTECTOR GENERAL LIABILITY COVERAGE FORM
COMMERCIAL PROTECTOR LIABILITY COVERAGE FORM

Your liability insurance is being renewed at this time with the addition of the Lead Exclusion. This results in some clarifications and reductions in coverage.

Following is a summary of the exclusion. NO COVERAGE IS PROVIDED BY THIS SUMMARY nor can it be construed to replace any provision in your policy. YOU SHOULD READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE for complete information on the coverages you are provided. If there is any conflict between the policy and this summary, THE PROVISIONS OF THE POLICY SHALL PREVAIL.

## LEAD EXCLUSION SUMMARY

**A.  CLARIFYING CHANGES** – language has been added for the purpose of clarity but there is no change in coverage intent.

Coverage is not provided for:

(1) Any injury or damage arising out of any premises or operations involving the mining, processing, manufacture, storage, installation, sale, distribution, removal, disposal, handling, inhalation, ingestion, absorption, use or existence of lead or lead contained in goods, products or materials.

(2) Any loss, cost or expense arising out of any:

    (a) Request, demand, order, or statutory or regulatory requirement that any insured or others in any way respond to, or assess the effects of lead or lead contained in goods, products or materials.

    (b) Claim or suit by or on behalf of a governmental authority for damages because of any response to or assessment of the effects of lead or lead contained in goods, products or materials.

**B.  REDUCTIONS IN COVERAGE** – language has been added which has resulted in reductions in coverage.

Coverage is not provided for any injury or damage arising out of lead and lead contained in goods, products or materials if such injury or damage is included in the products or completed operations hazard.

000029

ST-ML-55 (02/04)

Page 1 of 1

 

# IMPORTANT NOTICE TO POLICYHOLDERS

# BUILDING CODE EFFECTIVENESS GRADING SCHEDULE (BCEGS)

YOU MAY QUALIFY FOR A PROPERTY RATE REDUCTION. PLEASE READ THE FOLLOWING:

Recent catastrophes have underscored the importance of superior building codes and code enforcement in reducing losses from natural hazards. More than half the U.S. population, some 135 million people, is now living near one of our nation's coasts – the most windstorm-prone areas. Windstorms, hurricanes, tornadoes and tropical storms account for almost 80% of the catastrophe losses since 1986.

In response to the increasing cost and frequency of natural hazard catastrophes, the insurance industry developed a program known as the Building Code Effectiveness Grading Schedule (BCEGS). The schedule assesses the building codes in effect in your community and measures the community's enforcement of those codes. This measurement is translated into a community classification number. This classification number may be used as a factor in determining insurance premiums for individual buildings in your area. The result will be either no change in premium or possibly a premium reduction. BCEGS is not intended to determine compliance with any state or local law or regulation, nor is it used for making property/casualty loss prevention or life safety recommendations.

The BCEGS program contemplates that an individual building, no matter when constructed, which has been built in compliance with a nationally recognized model building code (or its equivalent) may be eligible for a better classification number than the community in which it is located.

**What do you need to do?**

1.    If your building was constructed in 1998 or after, the appropriate rating factor based on your community classification should have been applied automatically to your building in determining your renewal insurance premium. If you wish to verify this we suggest you contact your agent.

2.    If your building was built in compliance with a nationally recognized model building code (or its equivalent) it may be eligible for a better classification number than your community. Your building will need to be individually certified by a registered or licensed design professional such as an architect or professional engineer. Please contact your agent for further information and a copy of the required certification form.

000030

 

# IMPORTANT POLICYHOLDER NOTICE
## CONCERNING THE PROPERTY INSURANCE LOSS REGISTER

If a claim is filed on the insured property, information on the claim may be given to the Property Insurance Loss Register (PILR) for use by insurance companies in investigating the legitimacy of that claim as well as other claims for loss on the property. Information which will be given to PILR may include the insureds name, age and sex, current and previous addresses, loss location, insurance policy information, cause of loss, type of property, and identification of others who have an interest in the property or who are involved in the claimed loss.

Such information may be collected by an insurer or an adjuster by questioning you, your spouse, others who have an interest in the property, those who are involved in the claimed loss, and fire department personnel. Information on you will be given by PILR to insurance companies which subscribe to its service for use in investigating other claimed losses.

On request, PILR will tell you whether it has information on you. It will let you see and copy such information (in person or by mail) or give you the nature and substance of such information by telephone. PILR may charge a reasonable fee for copies of information provided.

If you think information on you is incomplete or inaccurate, you may request PILR to make corrections. PILR will then investigate and:

1. give your correction to subscribers who previously received such information; or

2. inform you that it refuses to make your correction and give you its reason.

If PILR refuses to make your correction, you can have a statement of the reasons for your disagreement placed in PILR; and all subscribers who received or will receive information on you will also receive a copy of the statement. Information on your claim will normally be stored by PILR for five (5) years.

Inquires to PILR should be addressed:       **Property Insurance Loss Register**
**PO Box 2641**
**Jersey City, NJ 07310**

**Telephone: 201-469-2000**

Thank you for selecting us to service your insurance needs!

000031

 

# IMPORTANT POLICYHOLDER INFORMATION
# CONCERNING BILLING PRACTICES

**Dear Valued Policyholder:** This insert provides you with important information about our policy billing practices that may affect you. Please review it carefully and contact your agent if you have any questions.

---

**Premium Notice:** We will mail you a policy Premium Notice separately. The Premium Notice will provide you with specifics regarding your agent, the account and policy billed, the billing company, payment plan, policy number, transaction dates, description of transactions, charges/credits, policy amount balance, minimum amount, and payment due date. This insert explains fees that may apply to and be shown on your Premium Notice.

**Available Premium Payment Plans:**

- **Annual Payment Plan:** When this plan applies, you have elected to pay the entire premium amount balance shown on your Premium Notice in full. No installment billing fee applies when the Annual Payment Plan applies.

- **Installment Payment Plan:** When this plan applies, you have elected to pay your policy premium in installments (e.g.: quarterly or monthly installments – Installment Payment Plans vary by state). As noted below, an installment fee may apply when the Installment Payment Plan applies.

The Premium Payment Plan that applies to your policy is shown on the top of your Premium Notice. It is also shown on your Policy Declarations. Please contact your agent if you want to change your Payment Plan election.

**Installment Payment Plan Fee:** If you elected to pay your premiums in installments using the Installment Premium Payment Plan, an installment billing fee applies to each installment bill. The installment billing charge will not apply, however, if you pay the entire balance due when you receive the bill for the first installment. Because the amount of the installment charge varies from state to state, please consult your Premium Notice for the actual fee that applies.

**Dishonored Payment Fee:** Your financial institution may refuse to honor the premium payment withdrawal request you submit to us due to insufficient funds in your account or for some other reason. If that is the case, and your premium payment withdrawal request is returned to us dishonored, a payment return fee will apply. Because the amount of the return fee varies from state to state, please consult your Premium Notice for the actual fee that applies.

**Late Payment Fee:** If we do not receive the minimum amount due on or before the date or time the payment is due, as indicated on your Premium Notice, you will receive a policy cancellation notice effective at a future date that will also reflect a late payment fee charge. Issuance of the cancellation notice due to non-payment of a scheduled installment(s) may result in the billing and collection of all or part of any outstanding premiums due for the policy period. Because the amount of the late fee varies from state to state, please consult your Premium Notice for the actual fee that applies. (Late Payment Fees are not applicable in some states.)

---

**Special Note:** Please note that some states do not permit the charging of certain fees. Therefore, if your state does not allow the charging of an Installment Payment Plan, Dishonored Payment or Late Payment Fee, the disallowed fee will not be charged and will not be included on your Premium Notice.

---

Once again, please contact your agent if you have any questions about the above billing practice information.

**Thank you for selecting us to service your insurance needs.**

000032

 

# NOTICE TO POLICYHOLDERS
# COMMERCIAL GENERAL LIABILITY
# BROADENINGS, RESTRICTIONS AND CLARIFICATIONS OF COVERAGE

This notice has been prepared in conjunction with the implementation of changes to your policy. It contains a brief synopsis of the significant broadenings, restrictions and clarifications of coverage that were made in each policy form and endorsement. This notice does not reference every editorial change made in these forms and endorsements.

Please read your policy, and the endorsements attached to your policy, carefully.

## INTERNET LIABILITY

Internet Liability has been listed separately because the changes in these coverage forms result in broadening in coverage in certain respects and may, in certain states, result in a decrease in other respects. The impact of the changes in the revision are very difficult to quantify and may differ in different states.

### BROADENINGS OF COVERAGE

**CG 00 01 10 01 – Commercial General Liability Coverage Form (Occurrence Version)**
**CG 00 02 10 01 – Commercial General Liability Coverage Form (Claims-Made Version)**

- The definition of "coverage territory" in these coverage forms has been expanded to include personal and advertising injury offenses that take place via the Internet or other electronic means of communication, limited to some extent by the location where the suit is filed.

### RESTRICTIONS IN COVERAGE

**CG 00 01 10 01 – Commercial General Liability Coverage Form (Occurrence Version)**
**CG 00 02 10 01 – Commercial General Liability Coverage Form (Claims-Made Version)**
**CG 00 09 10 01 Owners And Contractors Protective Liability Coverage Form**
**CG 00 37 10 01 Products/Completed Operations Liability Coverage Form (Occurrence Version)**
**CG 00 38 10 01 Products/Completed Operations Liability Coverage Form (Claims-Made Version)**
**CG 00 39 10 01 Pollution Liability Coverage Form (Designated Sites)**
**CG 00 40 10 01 Pollution Liability Limited Coverage Form (Designated Sites)**
**CG 00 42 10 01 Underground Storage Tank Policy (Designated Tanks)**

- The definition of "property damage" in these coverage forms has been revised to expressly state that electronic data is not tangible property. In most states, the question of whether electronic data is tangible has not been finally decided by the courts in the context of the prior policy language. We do not consider electronic data to be tangible, and therefore, do not consider damage to such data to be "property damage." In jurisdictions where such data is ruled not to be tangible property under prior forms, this change amounts to a reinforcement of current intent. However, to some, this change may be considered a decrease in coverage, if such property is held to be tangible under prior forms. For that reason, out of caution, we are listing it as a decrease. Also, the description of electronic data was added.

**CG 00 01 10 01 – Commercial General Liability Coverage Form (Occurrence Version)**
**CG 00 02 10 01 – Commercial General Liability Coverage Form (Claims-Made Version)**

- The former Coverage B Personal and Advertising Injury Liability exclusion pertaining to an insured whose business is advertising, broadcasting, publishing or telecasting has been revised to include Internet type businesses such as web-site designers, and Internet search, access, content and service providers. However, a provision has been added to the exclusion which states that placing of frames, borders or links, or advertising for the named insured or others anywhere on the Internet is not, by itself, considered the business of advertising, broadcasting, publishing or telecasting.

© ISO Properties, Inc., 2001   000033

INSURED COPY

09/01/2006      8156716        NECLWMMP609              PGDM060D J22363        GCAFPPN    00000692  Page      17

 

- An exclusion has been added to Coverage B for "personal and advertising injury" arising out of electronic chatrooms or bulletin boards.

## CLARIFICATIONS IN COVERAGE

**CG 00 01 10 01 – Commercial General Liability Coverage Form (Occurrence Version)**
**CG 00 02 10 01 – Commercial General Liability Coverage Form (Claims-Made Version)**

- These coverage forms have been clarified with respect to the definition of "personal and advertising injury" offenses such as slander, libel and invasion of privacy by specifically applying the word "publication" to include all types of publication, including those that are electronic.

- These coverage forms have been clarified with respect to the definition of "advertisement" to include notices that are published via the Internet and other forms of electronic communication. Also a statement was included in the definition specifying that the definition applies to advertising material only, when other material, as well as advertising, is put forth on a web-site.

- An exclusion has been added to Coverage B Personal and Advertising Injury Liability to specifically reference the intellectual property rights of copyright, patent, trademark or trade secret. However, there is an exception to this exclusion for personal and advertising injury offenses of copyright, trade dress or slogan in an "advertisement"

- An exclusion has been added to Coverage B pertaining personal and advertising injury arising out the use of the Internet to divert another's customers away from a web-site.

## OTHER CHANGES

### BROADENINGS OF COVERAGE – COVERAGE FORMS

**CG 00 01 10 01 – Commercial General Liability Coverage Form (Occurrence Version)**
**CG 00 02 10 01 – Commercial General Liability Coverage Form (Claims-Made Version)**

- The Criminal Acts exclusion under Coverage B Personal and Advertising Injury Liability in these coverage forms is changed to permit coverage for the vicarious liability of other insureds who have no knowledge of a criminal act.
- Section II – Who Is An Insured in these coverage forms is broadened to include trusts as Named Insureds when designated in the policy Declarations.
- Section II – Who Is An Insured in these coverage forms is broadened to automatically include "volunteer workers" as insureds, but only while performing duties related to the conduct of the insured's business.

### BROADENINGS OF COVERAGE – ENDORSEMENTS

**CG 04 36 10 01 – Limited Product Withdrawal Expense Endorsement**

- When attached to the Commercial General Liability or Products/Completed Operations Liability Coverage Forms, this new endorsement provides reimbursement for certain expenses incurred because of a product withdrawal due to a recall or tampering.

**CG 20 37 10 01 – Additional Insured – Owners, Lessees Or Contractors – Completed Operations**

- This endorsement provides a broadening of coverage by explicitly providing completed operations coverage for a specified additional insured.

INSURED COPY

 

### CG 22 62 10 01 Underground Resources And Equipment Coverage

- This endorsement provides a broadening of coverage by adding an exception to the "damage to property" exclusion with respect to the care, custody or control provision. Coverage will be provided for such liability arising out of property damage included in the "underground resources hazard" for those oil or gas producing or servicing classes of risks otherwise excluded by CG 22 57 Exclusion – Underground Resources And Equipment Endorsement.

### CG 22 96 10 01 – Limited Exclusion – Personal And Advertising Injury – Lawyers

- This endorsement provides coverage for personal and advertising injury liability for lawyers when they perform activities that fall outside of a lawyer's professional services.

### CG 22 97 10 01 Druggists – Broadened Coverage

- The endorsement CG 22 97, is introduced for use in the states that permit broader pharmacists duties and responsibilities.

### CG 24 22 10 01 Amendment Of Coverage Territory – Worldwide Coverage

- When this endorsement is attached to a policy, the coverage is provided for offenses and occurrences anywhere in the world, subject to the limitation on where the suit is filed.

### CG 24 23 10 01 Amendment Of Coverage Territory – Additional Scheduled Countries

- When this endorsement is attached to a policy, coverage is broadened beyond the standard coverage territory (US including its territories and possessions, Canada and Puerto Rico), to include any other country that will be specified in the Schedule subject to the limitation on where the suit is filed.

### CG 24 24 10 01 Amendment Of Coverage Territory – Worldwide Coverage With Specified Exceptions

- When this endorsement is attached to a policy, coverage is broadened to anywhere in the world, subject to the limitation on where the suit is filed, with the exception of those countries that will be listed in the Schedule.

### CG 27 15 10 01 Extended Reporting Period Endorsement For Employee Benefits Liability Coverage

- This endorsement is available for purchase when canceling or non-renewing Employee Benefits Liability coverage and provides an extended period of five years during which a claim may be made by the insured.

### CG 28 05 10 01 Personal Injury Liability Endorsement

- This endorsement provides broadening in coverage over its prior provisions, as there will now be coverage for vicarious liability of other insureds who have no knowledge of a criminal act.

### CG 31 15 10 01 Construction Project Management Protective Liability Coverage

- When attached to an OCP policy, this new endorsement provides vicarious liability to the owner, contractor, architect or engineer or construction manager arising out of the work of the named insured contractor with an exception for professional services. Also, employees of the Named Insured will be covered for acts or omissions in connection with the general supervision of the contractor's operations.

000035

© ISO Properties, Inc., 2001

09/01/2006     8156716          NECLWMMP609     INSURED COPY     PGDM060D J22363     GCAFPPN    00000694   Page    19

 

**17-20 (12/02) School Amendatory Endorsement**
**17-20NY (12/02) School Amendatory Endorsement**

- Paragraph G. Extension of Who Is An Insured has been revised to include the members of parent support groups and student groups.

## CLARIFICATIONS IN COVERAGE AND OTHER EDITORIAL REVISIONS – COVERAGE FORMS

All General Liability coverage forms contain minor editorial revisions to provide for consistency among policies. In addition, these coverage forms have been revised to incorporate other various revisions in order to clarify coverage. Those latter changes to each individual coverage form are described below:

**CG 00 33 10 01 Liquor Liability Coverage Form (Occurrence Version)**
**CG 00 34 10 01 Liquor Liability Coverage Form (Claims-Made Version)**
**CG 00 37 10 01 Products/Completed Operations Liability Coverage Form (Occurrence Version)**
**CG 00 38 10 01 Products/Completed Operations Liability Coverage Form (Claims-Made Version)**

- These coverage forms are revised to clarify that international waters or airspace are included under "coverage territory" but only if an "injury" occurs in the course of travel or transportation between any two of the following: US (including its territories and possessions), Puerto Rico and Canada.

**CG 00 01 10 01 – Commercial General Liability Coverage Form (Occurrence Version)**
**CG 00 09 10 01 Owners And Contractors Protective Liability Coverage Form**
**CG 00 33 10 01 Liquor Liability Coverage Form (Occurrence Version)**
**CG 00 37 10 01 Products/Completed Operations Liability Coverage Form (Occurrence Version)**

- These coverage forms have been revised to incorporate the "known injury or damage" provisions directly into the Insuring Agreement. Formerly, the Insuring Agreement in these coverage forms was amended by an endorsement to include the "known injury or damage" provisions.

**CG 00 35 10 01 Railroad Protective Liability Coverage Form**

- We are not incorporating the "known injury or damage" provisions into the Railroad Protective Liability Coverage Form because railroad employees are covered under the application of Federal Employers Liability Act.

**CG 00 01 10 01 – Commercial General Liability Coverage Form (Occurrence Version)**
**CG 00 02 10 01 – Commercial General Liability Coverage Form (Claims-Made Version)**
**CG 00 09 10 01 Owners And Contractors Protective Liability Coverage Form**
**CG 00 33 10 01 Liquor Liability Coverage Form (Occurrence Version)**
**CG 00 34 10 01 Liquor Liability Coverage Form (Claims-Made Version)**
**CG 00 35 10 01 Railroad Protective Liability Coverage Form**
**CG 00 37 10 01 Products/Completed Operations Liability Coverage Form (Occurrence Version)**
**CG 00 38 10 01 Products/Completed Operations Liability Coverage Form (Claims-Made Version)**
**CG 00 39 10 01 Pollution Liability Coverage Form (Designated Sites)**
**CG 00 40 10 01 Pollution Liability Limited Coverage Form (Designated Sites)**
**CG 00 42 10 01 Underground Storage Tank Policy (Designated Sites)**

- The Legal Action Against Us Condition in these coverage forms has been revised to remove the phrase "obtained after an actual trial". This is because the definition of "suit" allows damages to be awarded through an arbitration or other alternative dispute resolution, so the judgment can be obtained without an actual trial.

- The Premium Audit Condition has been revised to state that the due date for the audit premium is the date shown as the due date on the bill. This is in compliance with a National Association of Insurance Commissioners (NAIC) requirement.

© ISO Properties, Inc., 2001

000036

INSURED COPY

09/01/2006      8156716      NECLWMMP609      PGDM060D J22363      GCAFPPN    00000695  Page      20

 

**CG 00 01 10 01 – Commercial General Liability Coverage Form (Occurrence Version)**
**CG 00 02 10 01 – Commercial General Liability Coverage Form (Claims-Made Version)**

- The Aircraft, Auto Or Watercraft exclusion under Coverage A in these coverage forms is being revised to clarify the intent of this exclusion to apply even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured.

**CG 00 01 10 01 Commercial General Liability Coverage Form (Occurrence Version)**
**CG 00 02 10 01 Commercial General Liability Coverage Form (Claims-Made Version)**
**CG 00 09 10 01 Owners And Contractors Protective Liability Coverage Form**
**CG 00 37 10 01 Products/Completed Operations Liability Coverage Form (Occurrence Version)**
**CG 00 38 10 01 Products/Completed Operations Liability Coverage Form (Claims-Made Version)**
**CG 00 39 10 01 Pollution Liability Coverage Form (Designated Sites)**
**CG 00 40 10 01 Pollution Liability Limited Coverage Form (Designated Sites)**
**CG 00 42 10 01 Underground Storage Tank Policy (Designated Tanks)**

- The Damage To Property exclusion in these policies is revised to clarify that expenses incurred for repairs, etc. made on the insured's own property for any reason, including to avoid injury to a third party, will not be covered.

**CG 00 35 10 01 – Railroad Protective Liability Coverage Form**

- The Pollution exclusion in this coverage form is revised to clarify that coverage is not excluded for the insured whose liability arises out of the escape of fuels or lubricants from equipment used by contractors at their job site in connection with operations performed by such contractors.

## CLARIFICATIONS IN COVERAGE AND OTHER EDITORIAL REVISIONS – ENDORSEMENTS

**CG 20 10 10 01 Additional Insured – Owners Lessees Or Contractors – Scheduled Person Or Organization**
**CG 20 33 10 01 Additional Insured – Owners Lessees Or Contractors – Automatic Status When Required In Construction Agreement With You**

- We are revising these endorsements to clarify that completed operations coverage for an additional insured is excluded.

**CG 20 22 10 01 Additional Insured – Church Members, Officers And Volunteer Workers**

- We are revising this endorsement to delete the reference to volunteer workers since the provisions relating to volunteer workers have been incorporated into the Commercial General Liability Coverage Form. This doesn't decrease coverage because of the fact that, in the prior edition of the coverage form, coverage for volunteer workers was excluded.

**CG 20 35 Additional Insured – Grantor Of Licenses – Automatic Status When Required By Licensor**
**CG 20 36 Additional Insured – Grantor Of Licenses**

- These new endorsements will add a person or organization who grants licenses as an additional insured to the policy of a person or organization who makes and distributes products of that person or organization. CG 20 35 provides automatic status as an additional insured of grantors of licenses. CG 20 36 requires that the grantor of the license be named in the Schedule of the endorsement.

**CG 21 37 10 01 Exclusion – Employees And Volunteer Workers As Insured (formerly Exclusion – Employees As Insureds)**

- We are revising this endorsement to clarify that volunteer workers as well as employees are excluded as insureds.

© ISO Properties, Inc., 2001    000037

09/01/2006     8156716     NECLWMMP609     **INSURED COPY**     PGDM060D J22363     GCAFPPN   00000696  Page     21

 

**CG 21 37 10 01 Exclusion – Employees And Volunteer Workers As Insureds**
**CG 22 71 10 01 Colleges Or Schools (Limited Form)**
**CG 22 72 10 01 Colleges Or Schools**

- The Aircraft, Auto Or Watercraft exclusion in these endorsements is being revised to clarify that this exclusion applies even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured.

**17-20 (12/02) School Amendatory Endorsement**
**17-20NY (12/02) School Amendatory Endorsement**

- Paragraph C. School Broadcasting and Publication – Personal and Advertising Injury Liability Extension has been revised as follows:
  - Editorial changes have been made to be consistent with format changes under Coverage B. exclusions in the Commercial General Liability Coverage Form
  - The definition of "advertisement" has been clarified to include notices that are published via the Internet and other forms of electronic communication. Also a statement is included in the definition specifying that the definition applies to advertising material only, when other material, as well as advertising, is put forth on a web-site. However, with respect to the Internet, advertisement is limited to the named insured's goods, products or services, and that part of the web-site that is about the named insured's goods, products or services.
- Paragraph E. Transportation of Students Limitation has been revised to clarify the intent of the Aircraft, Auto Or Watercraft exclusion to apply even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured.
- Paragraph G. Extension of Who Is an Insured has been revised to:
  - Delete reference to "volunteer workers" because "volunteer workers" are now included as insureds under the Commercial General Liability Coverage Form.
  - Expressly state that a substitute teacher is not a temporary worker.
- Paragraph I. Additional Insureds – By Contract, Agreement Or Permit has been revised as follows:
  - To further emphasize that the scope of coverage for the additional insured is confined to ongoing operations:
    - An entity's status as an insured under this endorsement ends when the named insured's operations for that entity are completed.
    - An exclusion has been added to expressly state what is already the case, that completed operations coverage is not provided to an additional insured.
  - The professional services exclusion has been revised to specifically reference architectural, engineering and surveying services.
  - An exclusion has been added to expressly state that coverage is not provided for the additional insured's sole negligence.
  - An exclusion has been added to explicitly state that this endorsement provision does not apply to an additional insured covered under a separate additional insured endorsement that is made a part of the policy.
- Former Medical Payments Extension – Volunteer Workers has been deleted because provisions relating to "volunteer workers" have been incorporated into the Commercial General Liability Coverage Form. See also BROADENINGS OF COVERAGE – COVERAGE FORMS in this notice.
- Paragraph L. Property Damage Liability – Elevators has been revised to explicitly state that coverage applies if the property damage results from the use of elevators.
- Paragraph M. Damage By Fire, Lightning, Explosion, Smoke or Leakage has been revised to include a provision which clarifies that the term fire, as used in the definition of insured contract, includes lightning, explosion, smoke or leakage from automatic protection systems.

**17-88 (12/02) School Amendatory Endorsement (Basic Form)**

- Paragraph C. Transportation of Students Limitation has been revised to clarify the intent of the Aircraft, Auto Or Watercraft exclusion to apply even if the claims allege negligence or other wrongdoing in the supervision, hiring, employment, training or monitoring of others by an insured.

**INSURED COPY**

09/01/2006      8156716          NECLWMMP609          PGDM060D J22363      GCAFPPN    00000697  Page      22

 

- Paragraph E. Extension of Who Is an Insured has been revised to:
    - Delete reference to "volunteer workers" because "volunteer workers" are now included as insureds under the Commercial General Liability Coverage Form.
    - Expressly state that a substitute teacher is not a temporary worker.
- Paragraph F. Additional Insureds – By Contract, Agreement Or Permit has been revised as follows:
    - To further emphasize that the scope of coverage for the additional insured is confined to ongoing operations:
        - An entity's status as an insured under this endorsement ends when the named insured's operations for that entity are completed.
        - An exclusion has been added to expressly state what is already the case, that completed operations coverage is not provided to an additional insured.
    - The professional services exclusion has been revised to specifically reference architectural, engineering and surveying services.
    - An exclusion has been added to expressly state that coverage is not provided for the additional insured's sole negligence.
    - An exclusion has been added to explicitly state that this endorsement provision does not apply to an additional insured covered under a separate additional insured endorsement that is made a part of the policy.
- Former Medical Payments Extension – Volunteer Workers has been deleted because provisions relating to "volunteer workers" have been incorporated into the Commercial General Liability Coverage Form. See also BROADENINGS OF COVERAGE – COVERAGE FORMS in this notice.
- Paragraph I. Property Damage Liability – Elevators has been revised to explicitly state that coverage applies if the property damage results from the use of elevators.
- Paragraph J. Damage By Fire, Lightning, Explosion, Smoke or Leakage has been revised to include a provision which clarifies that the term fire, as used in the definition of insured contract, includes lightning, explosion, smoke or leakage from automatic protection systems.

## 22-45 (12/02) Commercial General Liability Extension Endorsement

- Paragraph E. Property Damage Liability – Elevators has been revised to explicitly state that coverage applies if the property damage results from the use of elevators.
- Paragraph F. Damage By Fire, Lightning, Explosion, Smoke or Leakage has been revised to include a provision which clarifies that the term fire, as used in the definition of insured contract, includes lightning, explosion, smoke or leakage from automatic protection systems.
- Paragraph I. Additional Insureds – By Contract, Agreement or Permit has been revised as follows:
    - To further emphasize that the scope of coverage for the additional insured is confined to ongoing operations:
        - An entity's status as an insured under this endorsement ends when the named insured's operations for that entity are completed.
        - An exclusion has been added to expressly state what is already the case, that completed operations coverage is not provided to an additional insured.
    - The professional services exclusion has been revised to specifically reference architectural, engineering and surveying services.
    - An exclusion has been added to expressly state that coverage is not provided for the additional insured's sole negligence.
    - An exclusion has been added to explicitly state that this endorsement provision does not apply to an additional insured covered under a separate additional insured endorsement that is made a part of the policy.
- Paragraph J. Additional Insured – Vendors has been revised to expressly state that coverage is not provided for the additional insured's sole negligence.

## 22-60 (12/02) Religious Organization – Medical Payments – Athletics

- The title of this endorsement has been changed to reference Religious Organization.

 

**22-64 (12/02) Contractors Limited Pollution Liability Coverage – Work Sites**
**22-64IL (12/02) Contractors Limited Pollution Liability Coverage – Work Sites**
**22-64NY (12/02) Contractors Limited Pollution Liability Coverage – Work Sites**
**22-64SC (12/02) Contractors Limited Pollution Liability Coverage – Work Sites**

- The intentional injury or Damage exclusion has been strengthened to apply even if the injury or damage is of a different kind, quality or degree than the insured expected or intended, or the injury or damage is sustained by a different entity than the insured expected or intended.
- The endorsement provisions pertaining to the Limits of Insurance have been reformatted to improve readability. The Pollution Liability Aggregate Limit and the Each Pollution Incident Limit provisions now precede the endorsement provisions which revise the General Aggregate Limit contained in the Commercial General Liability Coverage Form.

**17-20 (12/02) School Amendatory Endorsement**
**17-20NY (12/02) School Amendatory Endorsement**
**17-22 (12/02) Exclusion – Lead Liability**
**17-88 (12/02) School Amendatory Endorsement (Basic Form)**
**17-98 (12/02) Exclusion – Asbestos Liability**
**22-44 (12/02) Amendatory Endorsement**
**22-45 (12/02) Commercial General Liability Extension Endorsement**
**22-59 (12/02) Voluntary Property Damage**
**22-61 (12/02) Religious Organization – Property Damage Coverage Extension**
**22-67 (12/02) Additional Insured – Club Members With Medical Payments Amendment**
**22-68 (12/02) Property Damage Amendment – Janitorial Services**
**22-73 (12/02) Contractors Property Damage Extension Endorsement**

- Editorial changes have been made throughout these endorsements to achieve consistency among policy forms.

## RESTRICTIONS IN COVERAGE – COVERAGE FORMS

CG 00 42 10 01 Underground Storage Tank Policy Designated Tanks

- This policy is revised to exclude coverage for corrective action costs due to willful noncompliance with any statute, law, or ordinance for corrective action measures in the event of an underground storage tank incident.

## RESTRICTIONS IN COVERAGE – ENDORSEMENTS

CG 21 66 10 01 Exclusion – Volunteer Workers

- When this endorsement is attached to a CGL, coverage is restricted by excluding volunteer workers as insureds from a CGL policy.

CG 22 69 10 01 Druggists

- We are revising CG 22 69 to clarify that the types of pharmacist services that are not within the traditional duties of pharmacists like writing prescriptions, administering drugs and vaccinations, and performing blood tests are excluded.

CG 22 94 10 01 Exclusion – Damage To Work Performed By Subcontractors On Your Behalf
CG 22 95 10 01 Exclusion – Damage To Work Performed By Subcontractors On Your Behalf – Designated Sites Or Operations

- When these new endorsements are attached to a CGL, coverage is restricted by excluding defects in "your work" from a CGL policy, even for work performed by a subcontractor.

© ISO Properties, Inc., 2001

000040

09/01/2006    8 156716    NECLWMMP609    **INSURED COPY**    PGDM060D J22363    GCAFPPN    00000699    Page    24

 

**CG 22 98 10 01 Exclusion – Internet Service Providers And Internet Access Providers Errors And Omissions**
**CG 22 99 10 01 Professional Liability Exclusion – Web-Site Designers**

- These endorsements are introduced to exclude coverage for injury or damage arising out of the rendering or failure to render Internet service, Internet access, web-site designer or consultant services, as these professional services are not contemplated in the CGL coverage form.

**CG 28 12 10 01 Pesticide Or Herbicide Applicator Coverage**

- This endorsement is being revised to apply the exception to the exclusion to only paragraph **1(d)** of exclusion **j.**, so that the scope of coverage for pesticide or herbicide applicator should be the same under OCP policy as it is under the CGL policy.

**22-59 (12/02) Voluntary Property Damage**
**22-61 (12/02) Religious Organization – Property Damage Coverage Extension**
**22-64 (12/02) Contractors Limited Pollution Liability Coverage – Work Sites**
**22-64IL (12/02) Contractors Limited Pollution Liability Coverage – Work Sites**
**22-64NY (12/02) Contractors Limited Pollution Liability Coverage – Work Sites**
**22-64SC (12/02) Contractors Limited Pollution Liability Coverage – Work Sites**

- The definition of "property damage" has been revised to expressly state that electronic data is not tangible property. This change is a reinforcement of current coverage intent. However, in some jurisdictions, this change may be a decrease in coverage if such property has been held to be tangible.

**22-45 (12/02) Commercial General Liability Extension Endorsement**

- The endorsement Schedule has been revised to allow the deletion of one or more of the following endorsement provisions:
  Provision C. PROPERTY DAMAGE – BORROWED EQUIPMENT
  Provision D. PROPERTY DAMAGE – CUSTOMERS' GOODS
  Provision G. MEDICAL PAYMENTS EXTENSION
  Provision I. ADDITIONAL INSUREDS – BY CONTRACT, AGREEMENT OR PERMIT
  Provision J. ADDITIONAL INSUREDS – VENDORS
  Provision K. BROAD FORM NAMED INSURED
  Provision L. FAILURE TO DISCLOSE HAZARDS AND PRIOR OCCURRENCES
  Provision M. KNOWLEDGE OF OCCURRENCE, OFFENSE, CLAIM OR SUIT

## EMPLOYEE BENEFITS LIABILITY COVERAGE

If your renewal contains **Employee Benefits Liability Coverage** endorsement **CG 04 35** and your expiring policy contained **Employee Benefits Liability Coverage Form 26-2**, then the following changes apply to your insurance:

## BROADENINGS OF COVERAGE

- The former Discovery Period provisions have been replaced by the Extended Reporting Period provisions. If your policy is terminated, an Extended Reporting Period is available by endorsement for an extra charge and lasts for five years

- The definition of "employee benefits program" has been revised to specifically include dental, vision and hearing plans, flexible spending accounts, employee stock ownership plans, leave of absence programs, tuition assistance programs, and transportation and health club subsidies.

© ISO Properties, Inc., 2001

ST-GL-410 (12/02)

000041

INSURED COPY

09/01/2006    8 156716    NECLWMMP609    PGDM060D J22363    GCAFPPN    00000700  Page    25

 

## CLARIFICATIONS IN COVERAGE AND OTHER EDITORIAL REVISIONS

- Editorial changes have been made throughout to achieve consistency among policy forms.

- Your Employee Benefits Liability Coverage is now provided by an endorsement that modifies the Commercial General Liability Coverage Part, and is no longer provided by a separate and distinct coverage part. Any pertinent information such as limits of insurance, Retroactive Date and premium will be displayed either in the Schedule of the endorsement or the Declarations for the Commercial General Liability Coverage Part.

- Investigation, settlement and defense provisions are no longer addressed separately and have been incorporated into the Insuring Agreement.

- The Insuring Agreement has been revised so that a claim will be deemed to be made at the earlier of the following times:
  - When notice of claim is received and recorded by any insured or by us, whichever comes first; or
  - When we make settlement.

- The Supplementary Payments provisions contained in the Commercial General Liability Coverage Form apply with respect to Employee Benefits Liability Coverage except for the cost of bail bonds and the provisions related to defense of the insured's indemnitees.

- "Bodily injury", "property damage" and "personal and advertising injury", as defined in the Commercial General Liability Coverage Form, are excluded from Employee Benefits Liability Coverage.

- An Employment-Related Practices exclusion has been added to reinforce what is already the case, that insurance does not apply with respect to wrongful termination of employment, discrimination, or other employment-related practices.

- The Dishonest, Fraudulent, Criminal or Malicious Act exclusion has been revised to emphasize coverage intent to cover only negligent acts and to expressly preclude coverage for willful or reckless violation of any statute.

- A Basic Discovery Period no longer applies. However, a "claim", because of an act, error or omission committed on or after the Retroactive Date and before the end of the policy period, that is received and recorded by the insured within 60 days after the end of the policy period will be considered to have been received within the policy period, if no subsequent policy is available to cover the claim.

- The Inadequacy Of Performance Of Investment /Advice Given With Respect To Participation exclusion replaces a portion of the former Plan Failure exclusion and expressly excludes errors in providing information on past performance of investment vehicles.

- A Taxes, Fines Or Penalties exclusion has been added. Formerly, taxes, fines or penalties were precluded from coverage by virtue of the definition of "loss".

- The Who Is An Insured provisions contained in the Commercial General Liability Coverage Form apply except as amended by the Employee Benefits Liability Coverage endorsement. Note that:
  - Volunteer workers and real estate managers are not insureds.
  - Your employees are insureds only if authorized to administer your "employee benefit programs".
  - Any person or organization having proper temporary authorization to administer your "employee benefit program", if you die, are insureds, but only until your legal representative is appointed.
  - Your legal representative is an insured, if you die, but only with respect to his or her duties as such.
  - Coverage under the newly acquired or formed organization provisions does not apply to any act, error or omission that was committed before you acquired or formed the organization.
  - The mobile equipment provisions contained in the Commercial General Liability Coverage Form do not apply

09/01/2006        8 156716              NECLWMMP609        INSURED COPY        PGDM060D J22363        GCAFPPN    00000701   Page    26

 

- The Conditions contained in the Commercial General Liability Coverage Form apply except as amended by the Employee Benefits Liability Coverage endorsement.

- The Definitions contained in the Commercial General Liability Coverage Form apply except as amended by the Employee Benefits Liability Coverage endorsement.
  - A defined term "claim" has been added to explain that we mean a demand or suit for damages as a result of an act, error or omission. Such a claim must be made by an employee or an employee's dependents and beneficiaries.
  - A defined term, "cafeteria plans" has been added and is used in the definition of "employee benefit program".
  - A defined term, "employee" has been added which means a person actively employed, formerly employed, on leave of absence or disabled, or retired. Leased workers are included, but temporary workers are not included.
  - Former defined terms, "loss", "wrongful act" and "policy period" no longer apply.

## RESTRICTIONS IN COVERAGE

- The Inadequacy Of Performance Of Investment /Advice Given With Respect To Participation exclusion replaces the former Participation Advice exclusion and applies to advice given with respect to participation or nonparticipation in any employee benefit plan.

- An Each Employee Limit applies in lieu of the former Each Loss Limit. This is the most we will pay for all damages sustained by one employee including damages sustained by the employee's dependents and beneficiaries. The deductible amount also applies to all damages sustained by one employee including damages sustained by the employee's dependents and beneficiaries.

- The definition of "administration" does not include interpreting the "employee benefits program".

 

## COMMERCIAL PROPERTY COVERAGE PART / EDITION 04 02

## NOTICE TO POLICYHOLDERS
## BROADENINGS, RESTRICTIONS AND CLARIFICATIONS OF COVERAGE

NO COVERAGE IS PROVIDED BY THIS POLICYHOLDER NOTICE NOR CAN IT BE CONSTRUED TO REPLACE ANY PROVISIONS OF YOUR POLICY. READ YOUR POLICY AND REVIEW YOUR DECLARATIONS PAGE FOR COMPLETE INFORMATION ON THE COVERAGES YOU ARE PROVIDED. IF THERE IS ANY CONFLICT BETWEEN THE POLICY AND THIS NOTICE, THE PROVISIONS OF THE POLICY SHALL PREVAIL.

THIS NOTICE HAS BEEN PREPARED IN CONJUNCTION WITH THE IMPLEMENTATION OF CHANGES TO YOUR POLICY. IT CONTAINS A BRIEF SYNOPSIS OF THE SIGNIFICANT BROADENINGS, RESTRICTIONS AND CLARIFICATIONS OF COVERAGE THAT WERE MADE.

THE SECTIONS OF THE POLICY THAT CLARIFY, BROADEN, REDUCE OR CHANGE COVERAGE ARE IDENTIFIED BELOW. SOME OF THE LANGUAGE OF THE NEW POLICY HAS BEEN RESTATED AND REPUNCTUATED FOR CLARITY AND READABILITY, BUT WITH NO CHANGE IN COVERAGE INTENT.

THE MATERIAL IS ORGANIZED BY INDIVIDUAL COVERAGE FORMS AND ENDORSEMENTS; HOWEVER, NOT ALL COVERAGE FORMS OR ENDORSEMENTS ARE INCLUDED IN A PARTICULAR POLICY. THIS NOTICE DOES NOT REFERENCE EVERY EDITORIAL CHANGE MADE IN THE FORMS AND ENDORSEMENTS.

PLEASE READ YOUR POLICY, THE ENDORSEMENTS ATTACHED TO YOUR POLICY AND THIS NOTICE CAREFULLY.

### PROPERTY DAMAGE COVERAGE FORMS

I.   CLARIFICATION OR PROCEDURAL CHANGES

- REPLACEMENT COST OPTIONAL COVERAGE

   In form CP 00 10, this Optional Coverage is revised to clarify that replacement cost coverage applies to tenants' improvements and betterments if the conditions of coverage are met.

   In form CP 00 17, this Optional Coverage is revised to clarify that replacement cost coverage applies to personal property owned indivisibly by all unit owners, and to fixtures, improvements, alterations and appliances within a unit if such property is covered in the policy.

   In forms CP 00 10, CP 00 17 and CP 00 18, this Optional Coverage is revised to more explicitly convey that the insured is not required to rebuild on the original premises, but the replacement cost is limited to the cost that would have been incurred in rebuilding at the original location.

- DEBRIS REMOVAL LIMIT OF INSURANCE (CP 00 10, CP 00 17, CP 00 18, CP 00 20, CP 00 80, CP 00 99)

   The Debris Removal Additional Coverage is revised to clarify the provisions governing the amount of coverage, and to incorporate the excess limit which was previously found in the Limits of Insurance clause. Examples are added to illustrate how the amount of coverage is determined.

 

- **LIMITED LIABILITY COMPANIES (CP 00 10, CP 00 17, CP 00 18, CP 00 40, CP 00 70, CP 00 99, CP 10 30)**

  In various coverage forms the Personal Effects and Property of Others coverage extension are revised to recognize members, managers and Limited Liability Companies.

  Additionally, in CP 00 40 and CP 00 70 the Additional Insureds and Newly Acquired Organizations coverage extensions are revised to recognize Limited Liability Companies.

- **LOSS PAYMENT CONDITION (CP 00 10, CP 00 17, CP 00 18, CP 00 20, CP 00 80, CP 00 99)**

  Language is added to the Loss Payment provision of the Loss Conditions section of the policy to clarify that determination of value is subject to the applicable Valuation Condition or any provision which amends or supersedes it.

- **VACANCY PROVISION (CP 00 10, CP 00 17, CP 00 18, CP 00 70, CP 00 99)**

  The language of the Vacancy Condition is revised to:

  - Clarify that rented space must be used to conduct customary operations, if a condition of vacancy is to be avoided.
  - Restate the percentage threshold for vacancy under an owner's policy, with no change in the actual threshold.
  - Add reference to the <u>total</u> square footage.
  - Add references to a general lessee, lessee, sub-lessee and building owner, in various parts of the provision which relates to an owner's policy.

- **DEDUCTIBLE CLAUSE (CP 00 10, CP 00 17, CP 00 18, CP 00 20, CP 00 80, CP 00 99)**

  The first paragraph of the Deductible clause is revised to elaborate on the interaction between this clause and the Coinsurance Condition in determining loss payment.

  The second paragraph of the Deductible clause, which deals with losses to more than one item of insurance in one occurrence, is revised to clarify that the losses will not be combined in determining application of the Deductible. However, the Deductible will be applied only once per occurrence.

- INSPECTION AND SURVEYS CONDITION (CP 00 99)

  The Inspection And Surveys Condition in CP 00 99, the Standard Property Policy, is revised to clarify that the condition does not apply to inspections, surveys, reports or recommendations made relative to certification of boilers, pressure vessels or elevators under state or municipal statutes, ordinances or regulations.

- NEWLY ACQUIRED PROPERTY (CP 00 40)

  The phrase "the total of all" is deleted from the Newly Acquired Property Coverage Extension, thus clarifying the intent that there is building coverage up to $250,000 at each building covered under the Extension, and coverage up to $100,000 for personal property at each building.

- INCREASED COST OF CONSTRUCTION (CP 00 10, CP 00 17)

  The Additional Coverage – Increased Cost Of Construction contains an exclusionary provision relating to pollution. Text is added, to make it explicit that the exclusion regarding pollution affects all aspects of the Increased Cost Of Construction coverage.

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
© Insurance Services Office, Inc., 2002, 2000.

INSURED COPY

09/01/2006     8156716     NECLWMMP609     PGDM060D J22363     GCAFPPN     00000705  Page     30

 

- VALUABLE PAPERS AND RECORDS (OTHER THAN ELECTRONIC DATA) **(CP 00 10, CP 00 17, CP 00 18, CP 00 99)**

  Valuable papers and records (other than electronic data) are addressed in a Coverage Extension of that title. There is no change in coverage.

## II. BROADENING OF COVERAGE

- SUPPLEMENTARY PAYMENTS – LOSS OF EARNINGS **(CP 00 40, CP 00 70)**

  The maximum daily payment for loss of earnings under the Supplementary Payments provision is being increased from the current $100 to $250 to more adequately recognize the earnings of many professions.

- ADDITIONAL COVERAGE – INCREASED COST OF CONSTRUCTION **(CP 00 10, CP 00 17)**

  A new coverage, Increased Cost of Construction (ICC), is added under Additional Coverages. The ICC is a limited coverage for the increased cost of complying with building codes following covered damage to a building that is insured on a Replacement Cost basis. The ICC provides a limit of $10,000 or 5% of the Limit of Insurance applicable to the building, whichever is less. For buildings insured under a blanket Limit, the 5% is applied to the value of the building as of time of loss. ICC coverage applies only to the repair, rebuilding or replacement of damaged parts of the building.

- REPLACEMENT COST OPTIONAL COVERAGE – PERSONAL PROPERTY OF OTHERS **(CP 00 10, CP 00 17, CP 00 18)**

  An option is added to extend Replacement Cost coverage to the personal property of others. The extension may be selected only when Replacement Cost coverage also applies to the Building and/or Business Personal Property insured under the policy.

- NEWLY ACQUIRED OR CONSTRUCTED PROPERTY COVERAGE EXTENSION **(CP 00 10, CP 00 17, CP 00 18, CP 00 99)**

  The Newly Acquired or Constructed Property Coverage Extension is revised to:
  - equate the start of the 30-day coverage period (and the inception date for calculation of premium) with the start of construction of <u>covered</u> property;
  - add coverage for business personal property at a newly constructed or acquired building at the insured location;
  - specify that the business personal property itself may be insured property or newly acquired property (e.g., acquisition of another firm's inventory); and
  - add coverage for newly acquired business personal property at the described building insured under the policy.

  CAUTION: The Extension does <u>not</u> apply to:
  - property at a fair, trade show or exhibition; or
  - personal property temporarily in the insured's possession either in the course of installing or performing work on such property or in the course of manufacturing or wholesaling activities.

- NON-OWNED DETACHED TRAILERS **(CP 00 10, CP 00 17, CP 00 18, CP 00 99)**

  This new Coverage Extension provides limited coverage on non-owned detached trailers. Coverage is based on <u>contractual</u> responsibility and is provided in the amount of $5,000, unless a higher limit is shown in the Declarations. The Coverage Extension is subject to the Causes of Loss Form that applies to the insured's business personal property (therefore, theft is covered only if the Special Causes of Loss Form applies, provided such Form has not been endorsed to exclude theft).

Includes copyrighted material of Insurance Services Office, Inc., with its permission.
© Insurance Services Office, Inc., 2002, 2000

000046